If you'd come up to the podium, we can hear you on the microphone. I would like to focus this morning on ... And I'm sorry, because the microphone didn't pick it up. Could you state again your name for the record? Oh, of course, Your Honor. Elizabeth Jubin Fujiwara and Joseph Rosenbaum for the Plaintiff and Mr. Nelson Chung is present in court today. Okay, thank you. Thank you, Your Honor. I'd like to focus on two points that I think are important today, Your Honors. What we're looking at is a mistake by the court regarding the last act of discrimination. It's clear from the EC-1 form that Mr. Chung was terminated on November 8th. That makes it 176 days to May 3rd. So if Mr. Chung were asserting a wrongful termination claim, that would not be time barred? That's correct, Your Honor. Is he asserting ... I don't find a wrongful termination claim anywhere in his complaint. His complaint was for constructive discharge and failure to accommodate. I think the attorney should have called it a wrongful termination claim, Your Honor. Let's assume the attorney ... Let's assume it's implicit. Yes. As I understand it, the record's clear that he was terminated because he didn't return to work. He may have been ill-treated before he left work, but he was terminated because he refused to return to work. How does that give rise to a discrimination claim? That was going to be my exact second point, Your Honor. Good. You may be aware of Alba Conti. She's kind of the goddess of sexual harassment law. She's written extensive treatises on sexual harassment law in the workplace and the practice. In her latest treatise, which is 2018, but at the time we didn't have the updated version when we wrote this two years ago, she talks just about that issue of continuing violations. Here's my problem with continuing violation. Mr. Chung left work. Yes. Never returned. Yes. It's hard to see that the violation could continue with respect to Mr. Chung while he conditions and failure to accommodate, and he got injured and left work. How could there be a continuing violation under this circumstance where he didn't go back to the workplace? That's the exact question. The way that Alba Conti explains this is when harassment results in a tangible employment action, you can bring in the other harassment. The reason this works here is you cannot tell it from the original trial briefs that the former attorney did, but what you look at and what should have been looked at and which was never looked at under a motion for Rule 5060 should have been requested to see whether or not other employees who are out of workers' comp were also terminated while they were on work. But we're dealing with a record that we have, and so the question is, is there any evidence at all in this record that the termination, which occurred because Mr. Chung declined to return to work. They said if you don't return within some period of time, we'll treat you as having quit. Is there any evidence that that termination was discriminatory in this record, not what you might have found had he had a different lawyer? In this particular record, there is none. The attorney did not do the proper discovery, and that's why we also move for reconsideration. Let me ask you one other question. Yes, Your Honor. With respect to the alleged bad conduct that took place before he left work, you do agree that's time barred, do you not? Not if I can bring in... Not if you can bring it in as... ...tangible employment action. But standing alone, it's time barred. Yes, I do, Your Honor. But if the court could indulge me, I think if I could say it this way, that by bringing in the charge of the original sexual orientation discrimination, and if the court, by doing an equitable tolling, would agree to remand and allow more discovery, then his case would definitely be alive. Because what happens in these kind of cases, in my experience, I've been doing this over thirty years, is Hawaii is a very closed community. It's very small in a lot of ways, and we have something called the coconut wireless. I think in discovery, we would have found out, if I would have been the attorney on the case, that probably Pam Okihara, who is the attorney on the case, had some influence with Gary Kubota, who wrote the letter. And we don't know that, because there was no proper discovery on this issue. And as Alba Conti explained, and as I referred to her section in my brief, when a supervisor has input in any way, then the employer is liable. But of course, we don't have discovery on that issue, but that's what I would ask the court to do, is to do equitable estoppel and remand it for proper discovery. As far as that equitable estoppel, there are cases that seem to indicate that Mr. Chun's situation is not strong enough, just looking at it as far as having a probate attorney friend who told him not to file a case regarding discrimination, wait until you're finished with your workers' comp. Then he had a completely brand new lawyer who filed the complaint that you saw, which was somewhat inadequate, to say the least. And then he stuck with the lawyer who only does foreclosures. And this lawyer, if you, I don't know if you went through the entire record, but this was his brief. It was three pages. It was amazing. I've never seen anything like it in my life. And he even put down the wrong date of the termination. He used the date of the October 24th letter, rather than doing the effective date of the termination. So of course, the judge made an error in the facts, because the attorney argued the wrong facts. And the attorney even drafted the declaration for Mr. Chun, indicating that the earlier date was the date that kicked in everything. And we all know now that no, it was November 8th. And also, the attorney indicated that Mr. Chun had met earlier with Mr. Chun. So basically, we have an attorney who doesn't really understand employment law and even argued... What's your point in bringing all this up? My point is that there was ineffective assistance of counsel. Well, there's no such thing as a right to effective assistance of counsel in a civil case, is there? No, you're correct. Well, then what's the point of bringing it up? The point is showing all the things that happened and why the case was not done properly, because he... Well, is that an excuse for not holding the plaintiff to the standards of the law? It is, Your Honor. Under some of the cases that I cited in my brief, it indicates that if it is so bad, such as gross negligence under 60B, for example, then the court can find justice and help the plaintiff out. Did you not read gross negligence in your complaint? I'm sorry, what, Your Honor? I said, do you plead gross negligence in your complaint? Yes, I did, Your Honor. In what respect? Show me what page, six. Oh, sure. In other words, in what respect was the attorney grossly negligent? I think he was grossly negligent in that he... Well, show me the... Point me... Oh, okay. The page and paragraph. On page four in the report. Page four. Okay. In your reply brief, is that what you said, ma'am? There I talked... Yes, sir. I talked about Fuller under Rule 59, and then later, on the next page, I talked about 60B. Well, wait a minute. Be more precise. Where's the language on page four, five, or six? Give me a page in line. It's the reply brief, Your Honor. It's what? Reply brief, page five, equitable tolling. Well, where's... I don't see gross negligence anywhere. It should be there, Your Honor. Let me check on my other one. Maybe I have my reply brief in the court below. Well, you only have five seconds left. We'll give you an extension of time. We talked about it on page five, Your Honor. Page five, what line? I don't have it by line, Your Honor, but it says be... Well, what paragraph? ...equitable tolling under 6B on page five. It's the third paragraph. It says... These are all arguments, I take it, you're raising to us for the first time. Yes, Your Honor. They were not... They were also argued below. In your 60B motion below? Yes, Your Honor. Okay. All right. Let's hear from the other side, and we'll give you a chance to respond. Okay. Thank you, Your Honor. Thank you. Good morning, Judges. Ernest Nomura on behalf of the City and County of Honolulu, Ms. Okihara, and Ms. Siruta. May it please the Court. I want to get out of the way two issues that the District Court had ruled on first. I don't think there's any question that that aspect of the Summary Judgment Order should be affirmed. As to the two individuals, Ms. Okihara and Ms. Siruta, it's clear under Hawaii law, clear under federal law, there's no individual liability under Title VII and Hawaii's counterpart. I think Summary Judgment can be affirmed. Footnote two in his order, so ruled. I think if there's anything that goes on in this case, those two... Summary Judgment on those two individuals should be affirmed. As to the 1983 claim, I think it's pretty clear based on the record, Mr. Chung had every opportunity to present to Judge Watson a constitutional right, a federal right that somehow was deprived. No evidence is in the record, so I think the 1983 claim as a matter of law was correct. Summary Judgment should be affirmed as to the individuals as well. In addition to the overarching theme was the untimeliness. 1983 claims, you look at the state statute of limitations, the two-year period, clearly it was just too late. Judge Hurwitz had mentioned it was a wrongful termination claim. Well, I'm asking if there was one. There was in couch in terms of what's called a PANAR public policy claim, a wrongful discharge in violation against public policy. Footnote 3 in Judge Watson's decision, Judge Watson had asked counsel on the motion whether or not he was pursuing the PANAR claim, the wrongful discharge in violation against public policy. Counsel admitted no, that claim is not being pursued. Judge Watson recognized that, so that claim essentially was dismissed. So I want to be clear on this. If this were only a complaint about failure to accommodate and constructive discharge when Mr. Chung left work, that would be time barred. Correct. If this were a claim about wrongful termination, it would not be time barred, would it? There would be a question of whether or not the October 2011 letter, which made his recognition effective November 2011, constituted a wrongful discharge. Right, right. There would be a question, but it wouldn't be time barred. Well, it would fall within the two-year limitations period when the first complaint was filed in state court. Yeah, okay. And it would be within the 300-day? Well, I don't think that you can— well, the 300-day is only relevant with respect to the federal discrimination charge. Right, so assume that that was a federal discrimination charge. I was discriminatorily discharged. To the extent that you can look at the November 2011 letter, which made his recognition effective November— Well, you know what it says. But my point is, if there were a federal claim arising out of that letter, it would not be time barred, would it? I would agree. Okay. I don't think— So I was asking your colleague, is there a claim that arises out of that letter? Was one asserted? And if one was asserted, does one survive summary judgment? No, there's no claim with respect to the 2011 letter. That 2011 letter had to do with Mr. Chung's exhaustion of all of his remedies in the workers' comp case. Was there any discussion in the district court about the plaintiff wanting leave to amend? Leave to amend—the amended complaint was filed in state court. Leave was not necessary at that time. And so by the time that the first amended complaint was filed, that was the basis for removal. Thereafter, no amendments had been requested by the plaintiff. Was there oral argument on the summary judgment motion? I think Judge Watson had indicated, and I think if you look at the transcript, which is part of the record, Judge Watson had indicated, assuming that I can allow you to amend your complaint to allege certain facts. I think Judge Watson at that time didn't have before him an appropriate amendment to the complaint motion, and so I don't think that was pursued, not only by the court, but by the plaintiffs themselves. So it was brought up during the course of the summary judgment motion. I beg your pardon? It was brought up at some point during the—in the district court, after the case was removed. I believe so. I believe it was raised—well, it wasn't raised formally by way of a motion to amend. Right. It was raised only during oral argument when Judge Watson had indicated that if you allow the plaintiffs the ability to amend the complaint, what facts would be asserted. And I think at that time, counsel couldn't present any facts to at least give Judge Watson a basis to allow amendment. All right. Thank you. I think if you look at the transcript, I think you'll see Judge Watson's colloquy on that issue. Just so we're clear, there was an argument—there was an oral argument on the motion. Correct, and I think the transcripts reflect that. But the salient facts that are before the court on this motion, on this review, appellate review, on Judge Watson's order granting summary judgment and Judge Watson's order denying reconsideration, they're not at dispute. Mr. Chung was employed for just over 14 months as a recreation director number one, which is an entry-level position. Going back a little bit, let me ask you again. Is it your position that—I don't know how to phrase this—that the complaint accompanied by the explanation counsel gave at the hearing, you think it's sufficient to raise a wrongful termination claim? No, because I think if anything, the wrongful termination claim would emanate from the October 2011 letter, and that October 2011 letter had nothing to do with any of the complaints that he's— All right. Now, when there was some, as you say, some talk about wanting leave to amend, was a wrongful termination claim mentioned during that discussion? The only wrongful termination possibility was in connection with the Panar claim, which is the wrongful termination against public policy. And Judge Watson asked counsel at that time whether he was pursuing that claim, and counsel agreed he was not pursuing that claim. And that's footnote three in Judge Watson's order? Precisely. All right. Thank you. So nowhere in the record, in terms of the evaluation process that Mr. Chung had undergone, does he complain at all about sex, sex orientation, gender stereotype, disability, any of the protected classifications. He had every opportunity to do so. There's nothing in the record to indicate that he complained to anyone, any supervisor, with respect to any kind of— But that's not the basis on which the court ruled. The court ruled that the claims were time-barred. Precisely. You don't even get into the McDonough-Douglas factors. You don't even get into protected classifications because it was time-barred. So I think based on that alone, I think there's no issues of fact there. No one disputed that. Let me ask you to assume for a second that the complaint asserted that the October 24 letter was an act of discrimination. Assume that the complaint asserted that. Could it be? In other words, I'm looking at the letter and it says, please return to work. Can a request to return to work be an act of discrimination? Standing alone, and I think there's got—I mean, because these are discrete acts, and I think the continuing violation theory looked at discrete acts, and somehow those discrete acts, timely discrete acts and untimely discrete acts, there has to be some relationship. What would have happened had Mr. Chung returned to work? Again, we're in the hypothetical area. Precisely. Had he returned to work on October 25th, would he have been given his old job back? Precisely, because that was what the city would have done, and that's how the city does for all employees who are returned to work on an extended leave of absence without pay, pending disposition of a worker's complaint. Because throughout, Mr. Chung, and the record indicates, had received doctor's notes saying he's unable to return to work. Unbeknownst to the city, of course, Mr. Chung was already employed as a cashier at the Navy commissary. So it wasn't as if the facts bear out that Mr. Chung was going to return to work anyway. So effectively, he was resigned, and he admitted that on the motion for summary judgment. So I think that on those undisputed facts, I don't think the October 2011 letter, otherwise return to work, otherwise you're going to be deemed resigned as of November 2011, can form the basis of a timely discrimination claim or wrongful termination claim. I think that, so you're looking at the order granting summary judgment. Let's take a look at the motion for reconsideration. For the first time, that's when they raised the equitable tolling issue. That's when they raised the continuing violation theory. I don't think on a motion for reconsideration, when you could have raised those issues, it was probably raised on a Rule 59 motion. So I think on that basis, Judge Watson certainly did not abuse his discretion in denying reconsideration. You cannot blame counsel, and I think the cases that we outlined in our brief, don't blame counsel for the inability to assert timely claims. That is a remedy that you don't look at the city, the employer for. That's a remedy that's someplace else. I would suggest that based on the clear record, Mr. Chung's own admissions, the documents that are before the courts, that there was nothing that Judge Watson did that erred as a matter of law on the motion for summary judgment, or that he abused his discretion on the denial of the recon. So on that basis, I would urge the court to affirm the decision. Okay, thank you. We do put a minute on the clock. So if you'd like a minute to respond. Your Honor, I think it should be clear that if the complaint was amended upon our claim, it could have been added to the complaint, because what happened here was in fact, the ICA did not come down with its decision until the year 2014. So in fact, Mr. Chung was... I mean, which claim could have been added to the complaint? Upon our complaint for wrongful termination. And what was the public policy that was violated? The public policy is in Hawaii. We have a statute that while you are on workers' compensation, it is forbidden to fire the person. But how is the letter of firing? It says you're now off work, you've now rehabilitated yourself physically. I'm sorry. By the way, we'll give you time to answer, but I want to be clear. The letter says, please return... He wasn't fired while on workers' comp, was he? He was still on workers' compensation, Your Honor, because they said that the Labor Board made a decision in September, but if you look at the record, you'll see that the ICA did not issue its final decision until 2014. But he wasn't fired then. He was fired... In fact, Judge Howard says at the end, they asked him, you know, please come back to work. Your Honor, in harassment... Now, so how do you relate that to, you know, something against public policy? What was against public policy was, you know, telling the plaintiff come back to work. Because he was still on workers' compensation. It was still being appealed, Your Honor. Didn't that happen once? As I recall this record, at one point they sent him a letter and then they withdrew it because they realized he was still on workers' comp. Correct. So you're not complaining about that, are you? No, I'm not. But what happened was his workers' compensation attorney wrote to them on October 31st explaining they cannot fire him because there is still an appeal going on, and that appeal was at the ICA, and that decision did not come out until 2014. But you agree that at least prior counsel told Judge Watson that you were not asserting a partner claim. Yes, that was part of the problem. And as far as going back to work, if you've been harassed under harassment law, if the situation hasn't changed or you're in fear of more harassment, then you're not obliged to go back to work. There are all kinds of issues about that. Yeah, but if the argument is we should send it back to allow the committee to be amended to add the partner claim, that's a hard thing for us to do when counsel in front of the district judge says, I don't have one, I'm not asserting one. For us now to send it back saying the judge erred in not allowing the Second Amendment complaint to be filed to assert a claim that counsel right in front of him denied that he had, that's a tough one. That is. That's how terrible the journey was. But also to make it easier, Your Honor, if you could send it back and let us do discovery on the issue if the decision to ask him to not return to work was based on previous harassment. Can I ask you one other question? Where in the record would I find the letter of October 31st? I can get it for you. No, just tell me, was it appended to a motion for summary judgment, appended to a motion for reconsideration? I believe it's in my reconsideration. Okay. It wasn't in the summary judgment papers, is that right? Oh, no. I filed it. Okay. Okay. Thank you, Your Honor. Thank both sides for their arguments. Chung v. City and County of Honolulu now submitted for decision.
judges: Tashima, W. Fletcher, Hurwitz